# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                      |     |                              |
|--------------------------------------|-----|------------------------------|
| Guy J. Westmoreland,                 | )   |                              |
|                                      | )   |                              |
| Plaintiff,                           | )   |                              |
|                                      | )   |                              |
| v.                                   | )   | Civil Action No. 13-2058 (CKK) |
|                                      | )   |                              |
| Federal Bureau of Investigation,     | )   |                              |
|                                      | )   |                              |
| Defendant.                           | )   |                              |
|                                      | )   |                              |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment [ECF No. 22]. For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, in an effort to obtain investigative records maintained by the Federal Bureau of Investigation ("FBI") in its Springfield, Illinois Field Office and its headquarters in Washington, DC ("FBIHQ"), *see generally* Compl. ¶¶ 1-8, "pertaining to U.S. v. WESTMORELAND, District Court No. 3:98-CR-30022-002-WDS." *Id.* ¶ 1. In a FOIA request directed to the Springfield Field Office, plaintiff sought the following information:

> 1)    Any and all FD-302 forms dated January 5, 1998, January 6, 1998 and or which were appended to the transcripts of the recorded telephone conversations between [plaintiff] and Richard Abeln made by agent Kale Jackson of the F.B.I. on January 5, 1998;

1

2)        Any and all case reports of conversations, interviews or statements between agent Jackson, F.B.I. and [plaintiff] on January 6, 1998;

3)        Any and all case[] reports written by special agent Kale Jackson, F.B.I., on or concerning January 5, 1998, or January 6, 1998; and,

4)        Any and all reports, notes, transcripts, tapes (audio or video) and/or other records of any events which occurred on January 5th. or 6th., 1998 in Illinois State Police Headquarters between [plaintiff] and special agent Kale Jackson, F.B.I.[,] or between special agent Kale Jackson, F.B.I., and unknown others concerning [plaintiff].

Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Decl. of David M. Hardy ("Hardy Decl."), Ex. A (Freedom of Information Act Request dated June 13, 2000); *see* Compl. ¶ 12.[1]  FBI advised plaintiff "that the large number of [FOIA] requests received by the FBI . . . caused a delay in processing his request," which it had assigned FOIPA Number 0925665-000, and that his request was to be processed in turn.  Hardy Decl. ¶ 9.

In April 2004, plaintiff submitted another request to the FBI for the same information he sought in the June 13, 2000 request.  *Id.* ¶ 10; *see id*., Ex. D (Freedom of Information Act Request dated April 18, 2004).  The FBI responded to the request, FOIPA No. 0925665-001, with the release of 34 pages of records after having withheld certain information under Exemptions 2, 7(C), and 7(D).  *Id.* ¶ 12; *see id*., Ex. E (Letter to plaintiff from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, dated June 28, 2004).  Dissatisfied with the response, plaintiff filed an administrative appeal of the FBI's initial determination to Office of Information & Privacy ("OIP").  *Id.* ¶ 13; *see id*., Ex. F (Letter to Office of Information & Privacy from plaintiff dated August 16, 2004).  On review of the appeal, "and as a result of discussions between FBI personnel and a member of OIP's

---

[1]  Plaintiff's three prior FOIA requests, Nos. 0449247-000, 0927075-000, and 0925663-000, were closed administratively on June 2, 1999, May 10, 2000 and June 16, 2000, respectively.  Hardy Decl. ¶ 6.

staff, the FBI conducted a further search and located records potentially responsive to his request." *Id.* ¶ 15; *see id.*, Ex. H (Letter to plaintiff from Janice Galli McLeod, Associate Director, OIP, dated February 19, 2008). Accordingly, the OIP remanded the request for review and further processing of these newly-discovered records. *Id.* ¶ 15.

On remand from the OIP, the FBI "reopened [plaintiff's] request and assigned it FOIPA number 0925665-002." *Id.* ¶ 16. FBI staff subsequently searched for and located potentially responsive records maintained by FBIHQ. *See id.* ¶¶ 16-18, 20. On December 15, 2009, the FBI notified plaintiff that its staff had reviewed 348 pages of records and it released 298 of these pages to plaintiff. *Id.* ¶ 21. Further, the FBI informed plaintiff that certain information had been withheld under Exemptions 2, 3, 6, 7(C), 7(D) and 7(E). *Id.*; *see id.*, Ex. N (Letter to plaintiff from David M. Hardy dated December 15, 2009). Plaintiff did not appeal this determination to OIP. *Id.* ¶ 22.

Plaintiff's next request was limited to "all 302's, case notes, and any other documents relating to the arrest of Guy J. Westmoreland on or about January 6, 1998 by FBI Agent, Kale Jackson, including the attempted interrogation of Mr. Westmoreland on that date by Agent Jackson." *Id.*, Ex. O (Freedom of Information Act Request dated June 6, 2013) at 2. He "sent a duplicate request to the Fairview Heights, IL Resident Agency[.]" *Id.* ¶ 23. Both requests were forwarded to FBIHQ and were assigned a tracking number, FOIPA Number 1220491-000. *Id.* ¶ 24; *see id.*, Ex. P (Letter to plaintiff from David M. Hardy dated July 24, 2013). FBI notified plaintiff that records responsive to this request "were reviewed and released" to him on December 16, 2009. *Id.*, Ex. Q (Letter to plaintiff from David M. Hardy dated August 16, 2013).

Based on the FBI's subsequent review of its response to FOIPA Number 1220491-000, it was determined "that the 289 pages of records that [plaintiff] received in response to FOIPA

[Number 0925665-002] qualified for reprocessing." *Id.* ¶ 27; *see id.*, Ex. R (Letter to plaintiff

from David M. Hardy dated March 19, 2014).   It "reviewed 260 pages of records and [released]

235 pages to plaintiff." *Id.* ¶ 30; *see id.*, Ex. U (Letter to plaintiff from David M. Hardy dated

October 20, 2014).[2]

In addition, the FBI "located approximately 899 pages potentially responsive to

[plaintiff's] request." *Id.* ¶ 28.  Its staff "reviewed 558 pages and [released] 475 pages to

plaintiff," and explained that certain information had been withheld under Exemptions 3, 6, 7(C),

7(D) and 7(E).  *Id.* ¶ 31; *see id.*, Ex. V (Letter to plaintiff from David M. Hardy dated November

17, 2014).  In addition, the FBI referred an unspecified number of pages to unspecified "other

government agencies," *id.* ¶ 31, and upon return of these materials, the FBI withheld information

from some documents under Exemptions 6 and 7(C) and released the others in full, *id.* ¶ 32; *see

id.*, Ex. W (Letter to plaintiff from David M. Hardy dated December 17, 2014).

Plaintiff filed this civil action in December 2013 [ECF No. 1].  Defendant requested

[ECF Nos. 13 and 16], and the Court granted [Minute Orders dated 07/12/2014 and 09/23/2014]

two extensions of time for its Answer or other response to the Complaint.  Its motion for

summary judgment [ECF No. 22] was filed on January 6, 2015.[3]  In its January 7, 2015 Order

[ECF No. 24], the Court directed plaintiff to file an opposition or other response to defendant's

motion by February 13, 2015.  The Order also advised plaintiff of his obligations under the

---

[2]  Although plaintiff incurred but has not paid copy fees, *see* Hardy Decl. ¶¶ 28, 31, the FBI nevertheless has
released records, *see id.* ¶¶ 21, 30-31.
[3]  Plaintiff argued that defendant's motion should be denied because it was not filed timely and because defendant
did not respond to plaintiff's motion to compel discovery.  *See* Pl.'s Decl. in Opp'n to Def.'s Mot. for Summ. J. ¶ ¶
13-14, 18-19.  Contrary to plaintiff's assertion that defendant's summary judgment was filed one day late, *see* Pl.'s
Brief in Opp'n to Def.'s Mot. for Summ. J. at 6, defendant filed its dispositive motion on January 6, 2015 in
accordance with the Court's Minute Order dated 09/23/2014.  Because the supporting declaration could not be
viewed on the electronic docket, defendant filed the declaration with a separate Notice of Filing [ECF No. 23] on
January 7, 2015.  Furthermore, the Court denied [ECF No. 30], a motion to compel discovery [ECF No. 26].
Defendant therefore was not obligated to respond to plaintiff's discovery requests, and its lack of response is not a
proper basis to deny its summary judgment motion.

Federal Rules of Civil Procedure and the local rules of this Court to respond to motion and

warned him that, if he failed to file a timely opposition, the Court would treat the motion as

conceded.  Plaintiff filed both an opposition to the motion on January 29, 2015 [ECF No. 33],

and a supplemental memorandum on March 20, 2015 [ECF No. 36].

## II.  DISCUSSION

### A.  Summary Judgment in a FOIA Case

A FOIA case typically is resolved on a motion for summary judgment.  *See Petit-Frere v.*

*U.S. Attorney's Office for the Southern District of Florida*, 800 F. Supp. 2d 276, 279 (D.D.C.

2011) (citations omitted), *aff'd per curiam*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir.

Sept. 19, 2012).  The Court grants summary judgment if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  An agency may meet its burden solely on the basis of affidavits or

declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as

long as they "describe the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record [or] by evidence of

agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote

omitted).

### B.  The FBI's Searches for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is

dependent upon the circumstances of the case."  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d

1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted).  An agency

"fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search

was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995). "The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

The FBI's Central Records System ("CRS") "maintain[s] all administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." Hardy Decl. ¶ 34. Its "numerical sequence of files [is] broken down according to subject matter," and a file's subject matter "may relate to an individual, organization, company, publication, activity, or foreign intelligence matter (or program)." *Id.* "Certain records in the CRS are maintained at FBIHQ[ while r]ecords that are pertinent to specific field offices of the FBI are maintained in those field offices." *Id*.

"Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order." *Id.* ¶ 35. "The General Indices consist of index cards on various subject matters that are searched either manually or through the automatic indices." *Id.* Entries in the

General Indices are either "main" or "reference" entries. *Id.* A "'main' entry . . . carries the name corresponding [to] a subject of a file contained in the CRS," *id.* ¶ 35(a), and a reference entry (also called a cross-reference) "generally [is] a mere mention [of] or reference to an individual, organization, or other subject matter, contained in a document located in another 'main' file on a different subject matter," *id.* ¶ 35(b).

In order to search the CRS, one uses the Automated Case Support System ("ACS"), *id.* ¶ 34, implemented in 1995 to "facilitate[] more . . . expeditious access to records maintained in the CRS," *id.* ¶ 37. There are "three integrated, yet separately functional, automated applications" within the ACS: Investigative Case Management (ICM), Electronic Case File (ECF), and Universal Index (UNI). *Id.* ¶ 38. ICM allows for the opening, assigning, and closing of investigative cases, and for setting, assigning, and tracking leads. *Id.* ¶ 38(a). Each new case is assigned a Universal Case File Number which includes a three-digit number representing the type of investigation, a two-letter code representing the office of origin, and a five-digit number for the particular investigation. *Id.* ECF is "the central electronic repository for the FBI's text-based documents." *Id.* ¶ 38(b). UNI "provid[es] a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 38(c). An individual's name along with identifying information such as date of birth and Social Security number, are recorded. *Id.* Generally, the Special Agent assigned to a case determines whether to index the name of an individual who is neither a subject, suspect nor victim; only "information considered to be pertinent, relevant, or essential for future retrieval" is indexed. *Id.* ¶ 39. Without an index, "information essential to ongoing investigations could not be readily retrieved," and, therefore, "the General Indices to the CRS files are the means by which the FBI . . . determine[s] what

retrievable information, if any, [it has] in its CRS files on a particular subject matter or individual, such as Guy J. Westmoreland." *Id.*

The declarant states that a search of CRS automated indices of the Springfield Field Office for records responsive to plaintiff's June 13, 2000 FOIA request identified file number 166C-SI-49338.  Hardy Decl. ¶ 40.  On remand from OIP in 2008, the FBI conducted a new search of CRS automated indices using variations of plaintiff's name as search terms.  *Id.* ¶ 41. This search identified two main files.  *Id.*  A third search in response to plaintiff's June 6, 2013 request identified no additional records.  *Id.* ¶ 42.  "However, a further review of the material previously processed and provided to plaintiff revealed that the original processing of records may have been conducted based on a narrow interpretation of plaintiff's request."  *Id.* Accordingly, FBI staff "reprocess[ed] these records by applying a broader interpretation of plaintiff's request in order to achieve maximum disclosure[.]"  *Id.*   In total, the FBI processed 818 pages of records.  *Id.* ¶ 44.  "Of these 818 pages, 15 pages were withheld in full, 457 pages were released in part, and 264 pages were released in full."  *Id.*  Because 82 pages of records were deemed duplicative, the FBI withheld them in full.  *Id.*

Plaintiff finds fault with the FBI's failure to produce the specific records of interest to him, that is, information pertaining to his interaction with FBI Special Agent Kale Jackson at the Illinois State Police Headquarters between January 5, 1998 and January 7, 1998.  *See* Pl.'s Opp'n at 3, 5, 10; *see also* Hardy Decl., Ex. O (Freedom of Information Act Request dated June 6, 2013) at 2.  He claims that defendant "ha[s] instead produced records of everything else, which bear[s] little importance to [his] specific request for . . . records pertaining to the January 5, 6, 7yh, 1998 dates, and the specific conversations, interviews and recordings between 'FBI Agent, Kale Jackson', and the plaintiff."  *Id.* at 3.

The adequacy of an agency's search is not determined by its results or the requester's level of satisfaction with its results.  *See, e.g., Zavala v. Drug Enforcement Admin.*, 667 F. Supp. 85, 95 (D.D.C. 2009).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d at 128).  Plaintiff's mere "speculation as to the existence of additional records . . . does not render the search[] inadequate," *Concepción v. Fed. Bureau of Investigation,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009), notwithstanding his assertion, *see generally* Pl.'s Supplemental Brief in Opp'n to Defs.' Mot. for Summ. J. Showing "Bad Faith" on the Part of the Def. to Produce Requester['s] Freedom of Information Act Docs., that responsive records may have existed at some earlier time, *see, e.g., Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 98 (D.D.C. 2004) (finding that search was adequate even though certain records had been destroyed pursuant to the agency's document retention policy);

### C.  Exemptions

#### 1.  Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the "statute either (A) requires [withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The FBI relies on Exemption 3 in conjunction with Federal Rule of Criminal Procedure 6(e) to withhold Federal Grand Jury information."  Hardy Decl. ¶ 49.

Rule 6(e) prohibits disclosure of "matters occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d  496, 498-501 (D.C. Cir.), *cert.*

*denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998).  Rule 6(e) is a statute

for purposes of Exemption 3 because Congress affirmatively enacted it.  *See Fund for*

*Constitutional Gov't v. Nat'l Archives and Records Serv.,* 656 F.2d 856, 867-68 (D.C. Cir.

1981).  While acknowledging the existence of a "grand jury exception" to the general disclosure

requirements of the FOIA, the Court of Appeals for the District of Columbia Circuit limits the

exception to material which, if disclosed, would "tend to reveal some secret aspect of the grand

jury's investigation, such matters as the identities of witnesses or jurors, the substance of

testimony, the strategy or direction of the investigation, the deliberations or questions of jurors,

and the like."  *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d

574, 582 (D.C. Cir. 1987).

The FBI's declarant explains that the agency withholds "details concerning a Federal

Grand Jury subpoena, including the name and identifying information of an individual subject to

a Grand Jury subpoena and information that identifies specific records or evidence subpoenaed

by the Federal Grand Jury[.]"  Hardy Decl. ¶ 49.  Neither plaintiff's opposition nor his

supplemental memorandum mentions Exemption 3.  It is clear that information of this nature

falls within the scope of Exemption 3, and the FBI's determination is proper.

## 2. Exemption 7

FOIA Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S.

615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the

[agency] need only establish a rational nexus between the investigation and one of the agency's

law enforcement duties and a connection between an individual or incident and a possible

security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  Here, the declarant describes the FBI's law enforcement mission, Hardy Decl. ¶ 51, and explains that "the records located in response to plaintiff's [FOIA] requests pertain to the investigations of the murder of Debra Abeln and drug trafficking activities," *id*.  It is apparent not only from the nature of the FOIA request but also from the type and content of the documents produced by the FBI that the responsive records were compiled for law enforcement purposes.

### a. Exemptions 7(C) and 7(D)

Under Exemption 7(C), the FBI withholds the names of and identifying information about "[FBI] Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative and intelligence activities reported in the documents," Hardy Decl. ¶ 56, "third parties who are of investigative interest to the FBI and/or other law enforcement agencies," *id*. ¶ 57, "an individual who provided information to the FBI during the course of the investigation described in the responsive documents," *id*. ¶ 58, "third parties merely mentioned in the responsive documents," *id*. ¶ 59, and "city, local, and state law enforcement personnel," *id*. 60.[4]

Under Exemption 7(D), the FBI withholds the names of, identifying information about, and information provided by third parties to the FBI "concerning the activities of the plaintiff and other individuals' illicit drug activities and the murder of Debra Abeln," *id*. ¶ 64, in circumstances under which an assurance of confidentiality can be inferred," *id*. ¶ 65.  It also

---

[4]  The declarant states that "[t]he practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C)." Hardy Decl. ¶ 54 n.8.  Where, as here, all the records responsive to plaintiff's FOIA requests were compiled for law enforcement purposes, and where the names of and identifying information about third parties mentioned in the responsive records properly is withheld under Exemption 7(C), the Court need not determine whether Exemption 6 applies to the same information.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

withholds the same types of information about confidential sources who regularly supplied information to the FBI and to whom the FBI expressly has assured confidentiality.  *Id.* ¶¶ 62, 66, 69.

"The plaintiff . . . makes no requests for discovery of any personal nature of any other person(s) which could result in any embarrassment [or] harm."  Pl.'s Opp'n at 10.  The Court understands this statement as a concession by plaintiff that the FBI properly withholds the names of and identifying information about third parties appearing in the responsive records under Exemptions 7(C) and 7(D).  Even if plaintiff had not conceded these matters, the Court finds that FBI adequately justified its determinations.  *See, e.g., Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011) (protecting under Exemption 7(D) local law enforcement agencies, informants to whom confidential source symbol numbers were assigned, third parties who provided information under an express assurance of confidentiality, and third parties who provided information under an implied assurance of confidentiality); *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure").

b.  Exemption 7(E)

Lastly, the FBI withholds under Exemption 7(E) "statistical information contained in effectiveness rating forms used by the FBI (FBI Form FD-515 and its attachments)," *id.* ¶ 72, and "search results located through non-public databases used for official law enforcement purposes by the FBI and/or law enforcement personnel," *id.* ¶ 73, on the ground that their release

12

would disclose techniques and procedures used in law enforcement investigations, *see generally id*. ¶¶ 70-73.

Plaintiff makes no mention of the FBI's reliance on Exemption 7(E), the Court also treats this matter as conceded.  At any rate, the Court finds that the FBI adequately justifies its decision to redact the rating information set forth in Form FD-515, *see Frankenberry v. Fed. Bureau of Investigation*, 567 F. App'x 120, 124-25 (3d Cir. 2014), as well as information derived from non-public law enforcement databases, *Petrucelli v. Dep't of Justice*, __ F. Supp. 3d __, __, 2015 WL 3372345, at *7 (D.D.C. May 26, 2015).

### D.  Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

The FBI's declarant avers that "each responsive page was individually examined to identify non-exempt information that could be reasonably segregated from exempt information," and that "[a]ll segregable information has been released to plaintiff."  Hardy Decl. ¶ 74; *see id*. ¶ 75.  Plaintiff's opposition is silent on the matter of segregability.

Based on the FBI's supporting declaration, the Court concludes that the FBI adequately specifed "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### III.  CONCLUSION

The FBI has demonstrated that it conducted a search reasonably calculated to locate records responsive to plaintiff's FOIA requests and that it properly withheld information under Exemptions 3, 7(C), 7(D), and 7(E).  It has complied with its obligations under the FOIA, and its motion for summary judgment will be granted.  An Order consistent with this Memorandum Opinion is issued separately.


DATE:  August 25, 2015                        /s/
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge